## Miller's and Bowman's Appeal.

1. A testator gave to his wife all his personal estate " as well as (his) real estate for her use, she to draw all rents and interest that may become due on the same, * * with the following conditions after my honest debts are paid she can draw the rents and interest." If the rents and interest should not be sufficient for her support, she to use moneys collected and if that should not be sufficient to sell as much real estate as would maintain her. He gave also legacies payable after the death of his wife. *Held*, that there was no special charge and trust for payment of debts on his real estate created.

2. The estate being insolvent the rents received after the testator's death were payable after the death of his wife, to his children.

3. The will authorized the wife " with the consent of my administrator and the rest of my family to sell all the property." This was not an equitable conversion, being only a contingent authority.

January 21st 1869.   Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ.   READ, J., absent.   WILLIAMS, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Schuylkill county*: No. 310, to January Term 1869.  In the estate of Samuel Heilner, deceased.

The decedent died on the 5th of December 1855, having made a will, which was proved on the 20th of the same month, by which, amongst other things, he provided as follows :—

" First, I give and bequeath to my beloved wife Mary all my household furnitures and all the residue of my personal property as well as all my real estate for her use, she to draw all rents and intress that may become due on the same all outstanding debts and judgements which can be collected by my Executor hereafter mentioned with the following conditions, after my honnest debts are paid she can draw the intress and rents if suffisiant to mentain her and my daughter Lucinda providet my daughter Lucinda should remain unmarried and remain with her mother   Should the rents and intress of Judgement and outstanding debts not be sufficiant to mentain them comfortably she will be entitled to use as much of the collected monies as to keep them in eas and comfert and if that should not be sufficient she may sell as much of the real estate till she has a competency sufficient to leave comfortable   She shall have farther the right and I hereby impower her with the consent of my administrator and the rest of my family such as M. G. and P. Heilner, William Heilner and Ames Lentz to sell all the property and turn it in the money and put such moneys on Intress as they think propper either buy good State ar City stocks or lent it out on Morgage of which my beloved wife Mary will get all the accruing intress. for her and her daughter Lucinda suport as long as she leaves."

He gave also to several of his children $1000 each, and added—

" The above mentioned devition is to take place after the decees

[Miller's and Bowman's Appeal.]

of my beloved wife Mary. This is my last will and testament to be valent and to be acted on after the demise of my beloved wife Mary after her death the division to take place and what concerns her dower to go in full action imidetly." - He appointed Orlando Gray, his son-in-law, the executor of his will. The widow of the testator died January 4th 1859.

The estate of the testator proved insolvent; his real estate was sold by order of the Orphans' Court for the payment of his debts, and the proceeds distributed amongst his creditors.

The executor afterwards filed a final account, upon which there appeared to be in his hands a balance of $2283.36, which was referred to Charles D. Hipple, Esq., as auditor for distribution. He reported that "the whole of the fund in the hands of the executor arose from rents and profits of the real estate of deceased, accruing and collected by the executor some time after the death of Samuel Heilner;" and he distributed it amongst the children of the decedent, to the exclusion of the creditors.

R. B. & J. W. Miller and Jonas Bowman, creditors, excepted to the finding of the auditor, but it was confirmed by the Orphans' Court, and the above-named creditors appealed to the Supreme Court, assigning the decree of confirmation for error.

*B. W. Cumming* (with whom was *M. Strouse*), for appellants.— The testator's debts, by the express words of the will, were a lien upon the rents of his real estate: Alexander *v.* Murray, 8 Watts 504; Steel *v.* Henry, 9 Id. 523; Baldy *v.* Brady, 3 Harris 103; Agnew *v.* Fetterman, 4 Barr 63; Buehler *v.* Buffington, 7 Wright 294. Strict justice requires that all the profits of land should be applied first to the decedent's debts, but the law has provided no means to enforce the payment: Gordon on Decedents 131. This will contains a power to sell, which breaks the descent and vests the title in the trustee: Miller *v.* Meetch, 8 Barr 425; Alison *v.* Wilson, 13 S. & R. 330. Dissenting opinion of Huston, J., in McCoy *v.* Scott, 2 Rawle 222; Adams *v.* Adams, 4 Watts 160; Schwartz's Estate, 2 Harris 47. "After payment of debts" means that the testator gives nothing till that is done: Shallcross *v.* Finden, 3 Vesey 739; Kidney *v.* Coussmaker, 1 Id. 436; Hamilton *v.* Worley, 2 Id. 62.

*F. W. Hughes*, for appellee.—The will does not make a trust fund of the real estate charged with the debts. The testator manifestly supposed that it would not be necessary to touch his real estate to pay his debts: Agnew *v.* Fetterman, 4 Barr 56. There is not the same necessity here as in England, to charge real estate expressly for the payment of debts, because all land here is a fund for that purpose: Buehler *v.* Buffington, 7 Wright 294; Bleight *v.* Bank, 10 Barr 132; Nagle's Appeal, 1 Harris

262.   The rents of real estate of an insolvent decedent belong to the heirs: McCoy *v.* Scott, 2 Rawle 222; Adams *v.* Adams, 4 Watts 160–4; Schwartz's Estate, 2 Harris 47.

The opinion of the court was delivered, February 4th 1869, by Thompson, C. J.—It seems to us, after due consideration, that the auditor and court below were fully justified by the terms of the will of Samuel Heilner, deceased, in holding that he created no special charge and trust for the payment of debts upon his real estate.   He seems to have supposed that his personal estate was ample for that purpose, and more; for after the clause providing for the payment of his "*honest debts*," he appropriates or devises the interest on outstanding debts and judgments to the comfortable maintenance of his wife and daughter; thus showing his opinion that his personal property was more than sufficient to pay all his debts.

We must, therefore, look at the clauses of the will, wherein it is claimed that an express charge or trust upon his realty for the payment of debts, is to be found, in order to see if they mean that.

In the first clause the testator gives and bequeaths to his wife all his household furniture, and *residue of his personal property*, as well as his real estate for her use, she to draw all the rents and interest that may become due on the same.   This is the first clause in substance in full.   Then follows another sentence, "All outstanding debts and judgments, which can be collected by my executor hereafter mentioned, with the following conditions: After my honest debts are paid, she (my wife) can draw the interest and rents, if sufficient to maintain her and my daughter," &c.   It is argued that herein is an *express* trust created of the real estate to be concurrently liable with the personal estate for the payment of debts.   That it is *express* is utterly untenable.   If it be anything, it is but the implication of a trust. But would that supplant the charge created by law on the realty for the payment of debts?   Certainly I think not; and this the case of Agnew *v.* Fetterman, 4 Barr 56, shows.   If it were an express trust, it would prevent the running of the Statute of Limitations against debts due by the intestate, let the time be ever so long before the execution of the trust.   This would not be thought of, if that were the question here in the face of the decision in Agnew *v.* Fetterman.   We regard the clause insisted on as a charge upon the realty, as nothing more than a bungling mode of directing the payment of the testator's debts, a clause which, as Chief Justice Gibson said in the case cited, "from mere habits of expression, finds its way into almost every will, side by side with the formal disposition of the testator's soul and body." Certainly it is an almost universal thing for testators to direct the payment of "debts and funeral expenses" in the outset of

[Miller's and Bowman's Appeal.]

tneir testamentary dispositions. This very illiterate man thought it ought to appear in his will somewhere, and he gave it just such a location as to raise up a lawsuit, if it did nothing else. We do not think he meant more than a direction to pay his debts. If he had intelligently intended to make the realty and personalty without distinction as to the order of time, a fund to pay debts, it is strange that he did not authorize the executor to sell for that purpose, but he gave no power to anybody to sell for such a purpose. There was a conditional authority or power given to the widow to sell any part of the real estate devised for her use, if the rents, and interest on judgments and debts, were not sufficient to keep and *maintain her comfortably*. She also was empowered, with the consent of " my administrator and the rest of my family," to sell all the property, and turn it into money, to be invested as directed, so that she and her daughter might have the interest. This did not operate as an equitable conversion, being simply a contingent authority, as in Bleight *v*. The Bank, 10 Barr 131; Anewalt's Appeal, 6 Wright 414; Chew *v*. Nicklin, 9 Id. 84; nor did it break the descent. The sale never took place; at least we do not discover that it did. Throughout the will the real estate was devoted to the necessities, and control for that purpose of the widow, and it is evident that the testator never thought of any portion of it going to the payment of debts. If it be needed for debts it remains for that purpose and is liable to be so appropriated by order of the Orphans' Court.

The rule of the English cases, on a question of this kind, is different from ours, as is shown in Buehler's Heirs *v*. Buffington *et al.*, 7 Wright 278, by Lowrie, C. J., for the reason that the realty is not a fund there for the payment of general creditors; and charges and trusts for this purpose can only be executed in chancery. Hence it is, that as that is the only mode of reaching the realty, these trusts for such purposes are more readily sustained than here, where the only advantage is, as has been said, to save the trouble and expense of obtaining from the Orphans' Court an order of sale.

We are of opinion for these reasons, therefore, that the rents in the hands of the executor were not distributable to creditors, but belonged to the heirs, and that the decree in the court below is to be affirmed.

Decree affirmed at the costs of the appellants.